In the ESTATE OF Garcia Talmadge MILLER, Deceased.

No. 05–06–01471–CV.

Court of Appeals of Texas, Dallas.

Jan. 9, 2008.

Jasper C. Rowe, J.D., Law Offices of Jasper C. Rowe, Irving, TX, for Appellant.

John P. Polewski, Esq., Polewski & Associates, DeSoto, TX, for Appellee.

Before Justices MOSELEY, LANG, and MAZZANT.

## OPINION

Opinion by Justice LANG.

Jasper C. Rowe appeals from an August 1, 2006 order removing him as independent executor for the Estate of Garcia Talmadge Miller and ordering him to reimburse the estate for amounts paid by the estate to him as "attorney's fees." In five issues, Rowe argues the probate court erred when it: (1) excluded evidence which he claims would corroborate the existence of the oral instructions from the testator that Rowe take a one-third fee from the proceeds of the estate; (2) failed to enforce the contracts which authorized the compensation for his legal services; (3) found grounds to remove Rowe as independent executor; (4) interfered with his discretionary powers as independent executor to administer the estate in accordance with the wishes of the testator; and (5) exceeded its jurisdiction in entering an order for reimbursement of fees from him as the attorney for the independent executor when the action was against him in his capacity as independent executor.

Madison Miller responds that the probate court did not err because: (1) the exclusion of evidence was proper under the Statute of Frauds and Rowe failed to properly make a bill of exceptions; (2) the alleged contracts were unenforceable and Rowe failed to make a claim against the estate for payment; (3) the evidence is legally sufficient to support the probate court's findings that Rowe had grossly mismanaged and embezzled from the estate; (4) the Probate Code expressly empowers the probate court to remove the independent executor when there is a finding of gross mismanagement; and (5) the probate court was within its powers to order Rowe to return the money because it has the power to do what is necessary to protect the estate from mismanagement or unauthorized dissipation.

We decide against Rowe on all issues. The probate court's order of removal is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The testator, Garcia Talmadge Miller, died in Dallas County, Texas on October 9, 2002 at the age of 101 years old. He left a will dated August 6, 1985. Jasper C. Rowe, the grandnephew of the testator, was named independent executor under the will. On October 26, 2002, before the will was admitted to probate, Rowe, purportedly acting in his professional capacity as an attorney, entered into an "informational agreement" with the primary beneficiary of the estate, Madison Miller. This "informational agreement," in the form of a letter, purported to set forth "terms" of representation "in order to Enable Transfer of Estate to Heirs, ASAP." This letter informed Madison Miller of Rowe's hourly rate and "that at the exclusive option of this office, payment may be determined to be paid on a contingent fee basis." The letter includes a description of the contingent fee to be a "total legal fee of 1/3 (one-third) of the value of the claim ... if the case is settled before suit is filed" and was signed by Madison Miller on a signature line over which was typed "acknowledged and agreed to," as "Heir of Estate," for the "Estate of Lucy and Garcia T. Miller." Rowe admits that at the time of this letter, Madison Miller had no legal authority to bind the estate in this agreement.

On the same day as the letter to Madison Miller, Rowe, purportedly acting in his professional capacity as an attorney, wrote a letter to himself as "Proposed Independent Executor." This second letter contains virtually identical language to the one prepared for Madison Miller except that, in this letter, the paragraph outlining the fee structure is presented in boldface type.

However, this second letter was different from the letter to Madison Miller in at least three respects. First, Rowe's letter to himself noted that "the estate does not have sufficient liquid assets to pay an hourly amount" and outlined a "total legal fee of 1/3 (one-third) of the value of the estate ... if the estate is settled when the initial suit is filed." Second, he wrote "a fee of 4/10 will be due if the administration is settled or concluded after suit for administration is filed and if further litigation is necessary for the administration of the estate." Third, in this letter, Rowe also claimed a lien on real or personal estate property to guarantee the payment of attorney's fees.

After the probate proceeding was commenced, Rowe was appointed by the probate court as independent executor without bond on January 6, 2003. Also on that day, Rowe wrote himself another letter to "ratify" the earlier "engagement letter" hiring himself as the attorney for the estate. The will was ordered admitted into probate and was not challenged. The will did not provide for Rowe to receive a fee for his services, nor did it identify Rowe as a beneficiary. The Inventory and Appraisement was filed by Rowe on August 13, 2004, over one year and seven months after he was appointed independent executor. The Inventory was approved by the probate court on September 1, 2004, but only as to assets. Subsequently, Rowe sold two parcels of the estate's real property, paid himself nearly $100,000, and attempted to sell the last remaining piece of real estate.

On April 12, 2006, Madison Miller, the primary beneficiary of the estate, filed an ancillary action in the probate court to remove Rowe as independent executor, alleging Rowe was guilty of gross mismanagement of the estate, and requested the probate court appoint a successor. Rowe

filed an answer in the capacity of independent executor contesting the action and arguing Madison Miller was estopped from filing the action. The probate court heard evidence respecting Miller's motion on three different occasions.

During the hearing, Rowe testified the testator gave him explicit oral instructions that, after his death, Rowe should sell all real estate holdings in the estate. Rowe testified the testator instructed him to hire himself as attorney for the executor of the estate. Also, Rowe testified he was instructed to use the proceeds from the sale of real estate to pay himself one-third of the value of the estate as compensation for his services, before distributing the proceeds to the beneficiaries. Rowe claimed these instructions had been written, but the writing was lost. Additionally, Rowe offered the testimony of Pamela Atchison, the testator's grandniece, regarding statements allegedly made by the testator before his death about how he wanted his estate to be administered. Madison Miller objected to Rowe's questions on multiple grounds. The probate court sustained the objections and excluded Atchison's testimony regarding the testator's statements. However, Atchison was allowed to testify that there were written instructions from the testator, these written instructions were last seen when the testator put them in his safe several years prior to his death, and were not found after the testator's death. However, after sustaining Madison Miller's hearsay objection, the probate court did not allow testimony on the content of these written instructions.

The record reflects Rowe paid himself nearly $100,000 in legal fees before paying any beneficiaries. Madison Miller presented unrebutted expert testimony that all probate work could have been performed in a period of six months or less at a cost of no more than $5,000. Additional evidence showed that Rowe failed to pay property taxes or correct code compliance violations on the real estate after receiving notices from the city. Accordingly, the estate was charged penalties and the only remaining property in the estate was scheduled for foreclosure due to non-payment of property taxes. Other evidence admitted in the record reflected Rowe lent $25,000 of the estate's money to one of his own clients. The loan was not documented. Accordingly, there was no due date for repayment by the client, no agreement to pay interest, and no collateral was provided to secure payment. Rowe had not attempted to collect any payments on this loan at the time of the hearing.

After hearing the evidence, the probate court signed an order removing Rowe as independent executor. Rowe filed a motion for new trial and included affidavits setting out what he and his corroborating witness would have testified to in court, had they been allowed, regarding the statements made by the testator prior to his death. The motion for new trial was overruled and this appeal followed.

## II. EXCLUSION OF EVIDENCE

In issue one, Rowe argues the probate court erred in excluding evidence which he claims would corroborate the existence of the oral instructions from the testator that Rowe should take a legal fee of one-third of the proceeds of the estate. Madison Miller responds that the evidence was excluded under the Statute of Frauds and, because appellant failed to make a bill of exceptions, he did not preserve the issue for appeal.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Interstate Northborough P'ship v. State*, 66

S.W.3d 213, 220 (Tex.2001); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995). The trial court's evidentiary ruling will be upheld if there is any legitimate basis for the ruling. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.1998). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–242 (Tex.1985). Under an abuse of discretion review, an appellate court is not free to substitute its own judgment for the trial court's judgment. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002).

**B. Preservation of Point on Appeal**

■ An appellate court does not reach the question of whether evidence was erroneously excluded unless the complaint has first been preserved for review. *See McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 187 (Tex.1984). To preserve error on appeal, a party must present to the trial court a timely request, motion, or objection, state the specific grounds therefore, and obtain a ruling that appears in the record. TEX.R.APP. P. 33.1(a); *Wal–Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex.1999). Texas recognized two types of offers to preserve error: the offer of proof (formerly referred to as an informal bill of exception) and the formal bill of exception. *Fletcher v. Minn. Min. and Mfg. Co.*, 57 S.W.3d 602, 606 (Tex.App.-Houston [1st Dist.] 2001, pet. denied); *Clone Component Distribs. of Am., Inc. v. State*, 819 S.W.2d 593, 596–97 (Tex.App.-Dallas 1991, no writ); *Smith v. Smith*, 143 S.W.3d 206, 211 (Tex. App.-Waco 2004, no pet.). To challenge exclusion of evidence by the trial court on appeal, the complaining party must present the excluded evidence to the trial court by offer of proof or bill of exception.

TEX.R. CIV. EVID. 103(a), (b); TEX.R.APP. P. 33.2; *Langley v. Comm'n for Lawyer Discipline*, 191 S.W.3d 913, 915 (Tex.App.-Dallas 2006, no pet.) (concluding appellant failed to preserve error when no offer of proof or bill of exception was made).

■ An offer of proof consists of making the substance of the evidence known to the court and shall be made as soon as practicable after the ruling excluding the evidence, but before the court's charge is read before the jury. TEX.R. CIV. EVID. 103(a), (b). The offer of proof must be (1) made before the court, the court reporter, and opposing counsel, but outside the presence of the jury; and (2) preserved in the reporter's record. *Fletcher*, 57 S.W.3d at 607. The offer of proof allows a trial court to reconsider its ruling in light of the actual evidence. *Smith*, 143 S.W.3d at 211. When there is no offer of proof made before the trial court, the party must introduce the excluded testimony into the record by a formal bill of exception. *Southwest Country Enters., Inc. v. Lucky Lady Oil Co.*, 991 S.W.2d 490, 494–95 (Tex.App.-Fort Worth 1999, pet. denied); TEX.R.APP. P. 33.2.

"To complain on appeal about a matter that would not otherwise appear in the record," an appellant is required to make a formal bill of exception within thirty days of filing the notice of appeal and must include the precise evidence the party desires admitted. *See* TEX.R.APP. P. 33.2(e)(1); *Smith*, 143 S.W.3d at 211; *Sparks v. Booth*, 232 S.W.3d 853, 870 (Tex. App.-Dallas 2007, no pet h.). Rule 33.2(c) sets forth specific written and procedural requirements for a formal bill of exception. TEX.R.APP. P. 33.2(c). A formal bill of exception must be presented to the trial court for its approval and, if the parties agree to the contents of the bill, the trial court must sign the bill and file it with the

trial court clerk. Tᴇx.R.Aᴘᴘ. P. 33.2(c)(1), (2); *Bryan v. Watumull*, 230 S.W.3d 503, 516 (Tex.App.-Dallas 2007, no pet. h.). If the parties or the trial court do not agree with the contents of the bill, the rules provide a procedure for presenting the bill. Tᴇx.R.Aᴘᴘ. P. 33.2(c)(2); *Bryan*, 230 S.W.3d at 516. Simply filing the excluded evidence with the trial court is "not sufficient to make a proper bill of exceptions," even though it is part of the record on appeal. *See Malone v. Foster*, 956 S.W.2d 573, 577–78 (Tex.App.-Dallas 1997) (citing *McInnes*, 673 S.W.2d at 187) (rejecting argument that deposition on file with trial court is a sufficient bill of exceptions), *aff'd*, 977 S.W.2d 562 (Tex.1998).

## C. Application of Law to the Facts

 During the hearing, Rowe attempted to elicit testimony from Pamela Atchison, the testator's grandniece, regarding (1) the alleged oral agreement between Rowe and the testator and (2) the contents of the testator's written instructions regarding the handling of his estate. However, the testimony was excluded when the trial court sustained Madison Miller's objections to Rowe's questions. Atchison was allowed only to testify that she last saw the writing in the testator's possession when he placed it in an envelope in his file cabinet and the writing was not found after the testator's death.

Rowe made no offer of proof during the hearings as to the precise evidence he sought to offer through Atchison that was excluded. However, Rowe asserts he did make an offer of proof through affidavits attached to his motion for new trial in which Rowe and Atchison relate oral statements allegedly made to them by the testator regarding the handling of his estate after his death. Without citing any legal authority, Rowe argues "no bill of exceptions was necessary to present these issues, since it was incorporated in the Appellant's Motion for New Trial."

We cannot agree with Rowe's apparent argument that the motion for new trial "incorporated" the evidence and meets the requirements of an offer of proof. The affidavits attached to the motion for new trial do not meet the requirements of an offer of proof because the content of the affidavits was not offered at the hearing before the probate court, nor was the evidence offered prior to the probate court's decision to remove Rowe as independent executor. *See* Tᴇx.R. Cɪᴠ. Eᴠɪᴅ. 103(a), (b); *Fletcher*, 57 S.W.3d at 607; *Smith*, 143 S.W.3d at 211. Since Rowe made no offer of proof before the probate court, in order to preserve this point for appeal, Rowe was required to make a formal bill of exceptions. *See Southwest Country Enters., Inc.*, 991 S.W.2d at 494–95. Even though Rowe does not specifically contend that the affidavits attached to the motion for new trial constitute a formal bill of exceptions, we conclude, nevertheless, the affidavits do not meet the requirements of a formal bill of exceptions because the evidence was not presented to the trial court for its approval and signature in accordance with the Texas Rules of Appellate Procedure. *See* Tᴇx.R.Aᴘᴘ. P. 33.2(c)(1), (2); *Bryan*, 230 S.W.3d at 516. Furthermore, simply filing affidavits purporting to include the excluded evidence in the probate court's record as part of the motion for new trial does not create a bill of exceptions. *See Malone v. Foster*, 956 S.W.2d at 577–78. Since Rowe did not make a timely offer of proof before the probate court or file a formal bill of exceptions, he has failed to preserve the issue for appeal. *See Langley*, 191 S.W.3d at 915.

Rowe's first issue is decided against him.

## III. ORDER OF REMOVAL

In issues two through five, Rowe complains of the probate court's order removing him as independent executor and ordering reimbursement of the estate for attorney's fees paid to Rowe from the estate.

### A. Standard of Review

 A trial court's order removing an administrator is reviewed under an abuse of discretion standard. *See In re Estate of Clark*, 198 S.W.3d 273, 275 (Tex. App.-Dallas 2006, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer*, 701 S.W.2d at 241–242. Under an abuse of discretion review, the appellate court is not free to substitute its own judgment for the trial court's judgment. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52. In its role as fact-finder, it is within the trial court's sole province to judge the credibility of the witnesses and the weight to be given their testimony. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.-Dallas 1986, writ ref'd n.r.e). Under an abuse of discretion standard of review, an appellate court must make an independent inquiry of the entire record to determine if the trial court abused its discretion. *In re Estate of Clark*, 198 S.W.3d at 275 (citing *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 853 (Tex.1992) (orig.proceeding)).

 Where the trial court's findings of fact are unchallenged by complaint on appeal, they are binding on the appellate court and are entitled to the same weight as a jury verdict, unless the contrary is established as a matter of law or there is no evidence to support the finding. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex.1986); *Mullins v. Mullins*, 202 S.W.3d 869, 874, 876–77 (Tex.App.-Dallas 2006, pet. denied). Any unchallenged findings of fact that support the judgment will preclude reversal of the case. *Zagorski v. Zagorski*, 116 S.W.3d 309, 319 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

In his second issue, Rowe specifically argues the probate court "erred when it failed to enforce the contracts ... which governed the payment of a flat fee to the independent executor, in the capacity as attorney for the executor." We construe Rowe's reference to the "contracts" he claims entitle him to attorney's fees to include the letter agreement with Madison Miller and the two letters he wrote to himself about being hired as attorney for the estate for a legal fee of one-third the value of the estate. On this point, Rowe asserts Madison Miller is "estopped from changing his mind" regarding the payment to Rowe because Madison Miller "agreed in principle" to payment of Rowe's legal fees and "reaped the benefit" of Rowe's assistance. Also, Rowe argues that his oral agreement with the testator authorized him to hire himself and pay the legal fees out of the estate. In response, Madison Miller contends the probate court did not err in refusing to enforce the alleged contracts because the purported basis of his authority to hire himself, the oral agreement with the testator, was unenforceable as a violation of the Statute of Frauds and constituted a breach of Rowe's fiduciary duties. Furthermore, Madison Miller argues the probate court did not err in refusing to enforce the alleged contracts authorizing payment to Rowe because Rowe did not file a claim against the estate in his own name or list his claim as a debt of the estate.

#### 1. Applicable Law

### B. Failure to Enforce Contracts

 The Texas Rules of Appellate Procedure require an appellant's brief contain

"a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R.App. P. 38.1(h). The failure to adequately brief an issue waives that issue on appeal. *See Huey v. Huey*, 200 S.W.3d 851, 854 (Tex.App.-Dallas 2006, no pet.) ("Failure to cite applicable authority or provide substantive analysis waives issue on appeal."); *McIntyre v. Wilson*, 50 S.W.3d 674, 682 (Tex.App.-Dallas 2001, pet. denied) (appellant failed to adequately brief ground when he offered no legal analysis and cited only generally to law); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex.1994).

### 2. Application of the Law to the Facts

■ Rowe makes only a brief argument respecting the alleged contracts entitling him to attorney's fees. He cites one legal authority. *Burnett v. First Natl'l Bank of Waco*, 536 S.W.2d 600, 603 (Tex. Civ.App.-Eastland 1976, writ ref'd n.r.e.) (trustee relieved of liability to beneficiary for breach of trust when beneficiary gave consent with full knowledge of all the material facts which the trustee knew). No legal analysis of *Burnett* is provided and there is no suggested application of it to the facts. Neither does Rowe explain why his arguments should prevent the probate court from deciding not to enforce the "contracts" based on the other findings and conclusions made by the probate court that support its decision not to enforce the "contracts."

We conclude Rowe has failed to adequately brief this point on appeal and, therefore, has waived his complaint that the probate court erred in "failing" to enforce the "contracts" allegedly authorizing the compensation from the estate for his legal services. *See Huey*, 200 S.W.3d at 854; *McIntyre*, 50 S.W.3d at 682.

Rowe's second issue is decided against him.

### C. Findings to Support Rowe's Removal as Independent Executor

In issue three, Rowe complains the evidence is insufficient to support the probate court's findings of "gross mismanagement of the estate" and says there was no embezzlement. Rowe argues his actions were authorized by the alleged oral agreement with the testator and he was merely administering the estate according to the wishes of the testator. In response, Madison Miller argues the evidence is legally sufficient to support the probate court's findings that Rowe had grossly mismanaged and embezzled from the estate.

### 1. Applicable Law

■ The Probate Code provides for removal of an independent executor by the court in limited circumstances involving misapplication of estate property, embezzlement, gross misconduct or gross mismanagement.[1] "Gross misconduct" and "gross mismanagement" include, at a minimum: (1) any willful omission to perform a

---

1. The Probate Code provides:

 The county court, as that term is defined by Section 3 of this code, on its own motion or on motion of any interested person, after the independent executor has been cited by personal service to answer at a time and place fixed in the notice, may remove an independent executor when: ... (2) sufficient grounds appear to support belief that the independent executor has misapplied or

 embezzled, or that the independent executor is about to misapply or embezzle, all or any part of the property committed to the independent executor's care; ... (5) the independent executor is proved to have been guilty of gross misconduct or gross mismanagement in the performance of the independent executor's duties[.]

 Tex. Prob.Code Ann. § 149C(a)(2), (5) (Vernon Supp.2007).

legal duty; (2) any intentional commission of a wrongful act; and (3) any breach of a fiduciary duty that results in actual harm to a beneficiary's interests. *Sammons v. Elder*, 940 S.W.2d 276, 283 (Tex.App.-Waco 1997, writ denied).

### 2. Application of the Law to the Facts

On this point, Rowe only asserts that he did not commit gross mismanagement or embezzlement as found by the probate court because his actions in selling the real estate and making payments to himself as attorney for the estate were in accord with the wishes of the testator. However, in support of the Order of Removal, the probate court entered findings of fact that support the removal of Rowe as independent executor based on other instances of "gross mismanagement" in administering the estate.[2] Rowe does not challenge these fact findings. Accordingly, they are binding on this Court. *See*

*McGalliard*, 722 S.W.2d at 696; *Mullins*, 202 S.W.3d at 874, 876–77.

These unchallenged findings support the probate court's decision to remove Rowe based on gross mismanagement, independent of the grounds Rowe complains of on appeal. *See* TEX. PROB.CODE ANN. § 149C(a)(2), (5); *Zagorski*, 116 S.W.3d at 319. Therefore, we cannot conclude the probate court abused its discretion when it removed Rowe as independent executor based on "gross mismanagement" of the estate.

Rowe's third issue is decided against him.

### D. Probate Court "Interfered" with Independent Executor's Discretionary Powers

In issue four, Rowe argues the probate court erred when it "interfered" with his discretionary powers as independent exec-

---

2. The probate court's findings of fact and conclusions of law include:

5. The Estate of Garcia Miller could and should have been fully administered and closed within three months of January 6, 2003. The delay in administration and closing of the Estate constitutes gross mismanagement of the affairs of the Estate.
6. Jasper Rowe, acting as executor of the Estate, entered into a "contract" with himself under the terms of which he would act as attorney for the Estate and collect a fee of one-third the value of the Estate. The Court finds that the Estate did not need to hire an attorney because Jasper Rowe, executor, did not need legal advice to properly administer the Estate.... The Court further finds that when Jasper Rowe, as executor, paid himself based on the alleged contract for the services of Jasper Rowe as attorney, that this payment constituted a clear and gross breach of his fiduciary duties to the Estate, and that all payments made by Jasper Rowe to himself from the assets of the Estate constitute gross mismanagement of the Estate.

. . . .

9. The Court finds that Jasper Rowe gave $25,000.00 of the Estate's money to one of

Jasper Rowe's clients and did not receive either a promissory note, collateral, or an enforceable promise to repay the money in return. The Court finds that in doing so, Jasper Rowe was guilty of a gross conflict of interest and of gross mismanagement of the affairs of the Estate.

10. The Court finds that real estate owned by the Estate, at 4004 Munger Avenue in Dallas, has unpaid taxes on it, and that taxes have been unpaid during the entire period that Jasper Rowe was executor of the Estate. Jasper Rowe paid himself, and received rents from the 4004 Munger Avenue property without applying these monies to tax liability on the Munger Avenue property, knowing that there were unpaid taxes on that property, and knowing further that the taxing authorities had filed suit to foreclose on the property to obtain payment of taxes. The Court finds that Jasper Rowe was guilty of gross mismanagement of the Estate for allowing tax liability to accrue and grow, as well as for failing to prevent penalties, interest and the impending foreclosure of the Munger Avenue property.

utor to administer the estate in accordance with the wishes of the testator. In response, Madison Miller asserts the probate court did not err in removing Rowe as independent executor since the Probate Code "expressly empowers the probate court to remove an independent executor for misapplication or embezzlement of the assets of the estate, or for gross mismanagement of it."

### 1. Applicable Law

The Probate Code provides for removal of an independent executor by the court in limited circumstances involving misapplication of estate property, embezzlement, gross misconduct or gross mismanagement. *See* TEX. PROB.CODE ANN. § 149C(a)(2), (5).

### 2. Application of the Law to the Facts

As discussed above, the probate court did not err in removing Rowe based on gross mismanagement. The probate court's action cannot be properly characterized as "interference" with Rowe's discretionary powers. The Probate Code explicitly authorizes probate courts to remove an independent executor upon finding gross mismanagement. *See* TEX. PROB.CODE ANN. § 149C(a)(5).

Rowe's fourth issue is decided against him.

### E. Probate Court Exceeded Jurisdiction in Ordering Reimbursement to the Estate

In issue five, Rowe argues the probate court erred when it exceeded its jurisdiction by ordering reimbursement of fees

from him as the attorney for the independent executor when the action was against him in his capacity as independent executor. In response, Madison Miller argues the probate court has the power to do what is necessary to protect the estate from mismanagement or unauthorized dissipation.

### 1. Applicable Law

The Probate Code directs that "[t]he order of removal shall state the cause of removal and shall direct by order the disposition of the assets remaining in the name or under the control of the removed executor." TEX. PROB.CODE ANN. § 149C(b). The Probate Code also authorizes the probate court to deny commission to an executor or administrator who has been removed by the court.[3] Upon finding gross misconduct or gross mismanagement by the executor, the probate court may order refund of sums the executor has paid to himself prior to removal. *Geeslin,* 788 S.W.2d at 687 (Tex.App.-Austin 1990, no pet.) ("In addition to removing Geeslin from his position as independent executor, the probate court denied him a portion of his commissions and ... requir[ed] him to refund $132,989.23 in commissions previously paid. The court acted within its authority.").

### 2. Application of the Law to the Facts

In addition to removing Rowe on the grounds of gross mismanagement, the probate court made findings that Rowe was not entitled to payment as an attorney, that the will did not provide for payments to Rowe, and Rowe did not apply to

---

**3.** The Probate Code provides:

The court may, on application of an interested person or on its own motion, deny a commission allowed by this subsection in whole or in part if: (1) the court finds that the executor or administrator has not taken

care of and managed estate property prudently; or (2) the executor or administrator has been removed under Section 149C or 222 of this Code.

TEX. PROB.CODE ANN. § 241(a)(1), (2).

the probate court for any fees for serving as executor. No challenge is made to these findings of fact. They are binding on this Court. *See McGalliard,* 722 S.W.2d at 696. Additionally, the probate court ordered Rowe to pay back the monies he had paid to himself. Such an order is within the power of the probate court. *See* Tex. Prob.Code Ann. §§ 149C(b); 241(a)(1), (2); *Geeslin,* 788 S.W.2d at 687. Accordingly, we cannot conclude the probate court abused its discretion when it ordered Rowe to reimburse the estate for unauthorized payments made to himself from the estate.

Rowe's fifth issue is decided against him.

### III. CONCLUSION

All of Rowe's issues are decided against him. The probate court's order removing Jasper C. Rowe as independent executor and ordering him to reimburse the estate for all fees he paid to himself is affirmed.